HEARTLEY *v.* STATE.

(*Knoxville,* September Term, 1941.)

Opinion filed November 29, 1941.

JESSE HARGRAVES, of Chattanooga, for plaintiff in error.

NAT TIPTON, Assistant Attorney-General, for the State.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

This is an appeal from a conviction for the unlawful possession of a gambling device in which a fine of $10 was imposed.

It is conceded that this is a test case devised for the purpose of determining whether the mint vending machine, which was being operated in the place of business of plaintiff in error, is a gambling machine within the purview of our statutes, which are as follows:

5250. "No person shall have in his possession any gambling table or any device whatever for the enticement of any person to gamble."

11276. "If any person encourage or promote, aid or assist, the playing at any game, or the making of any bet or wager, for money or other valuable thing, or keep or exhibit any gaming table or device for gaming he is also guilty of a misdemeanor."

The machine in question falls within the classification dealt with in *Painter* v. *State,* 163 Tenn., 627, 629, 45 S. W. (2d), 46, 81 A. L. R., 173, in which it is said:

"The checks, of which the customer purchasing a package of mints may receive two or twenty, or some intermediate number, have no intrinsic value. They are

delivered to him for the sole purpose of enabling him to operate the machine in playing the game of baseball as described. No mints are delivered for checks; they are not redeemable for merchandise or cash; and they may not be retained by the customers."

In affirming the conviction in that case, the court made this further statement: "The use of machines of the character here involved in the sale of merchandise is a direct effort to arouse and exploit this instinct to gamble, for the profit of local merchants and the nonresident manufacturer. If otherwise, why make the number of checks to be received dependent upon chance? It can have no wholesome effect upon legitimate business, since its tendency is to substitute the lure of an additional uncertain consideration for quality of the merchandise sold as the purchasing inducement. It is sought to clothe the practice of gaming for trifles with the livery of legitimate business and thus cause it to appear respectable. The merchandise is a confection, particularly attractive to youth, and the amusement which may be won by the purchase is the playing of a game which appeals most strongly to youth. This combination has convinced us of the insidious evil of the display and use of the machine, as a violation of the quoted statute. The case involves not merely the small fine imposed upon the plaintiff in error, but the character of the device employed, and that this character is noxious we have no doubt. The issue is not controlled by the fact that the stakes to be played for are trifling. The fundamental and underlying principle of the offer made by the device to the customer is one of chance and hazard, and falls within the letter and spirit of the statute."

The machine in question is the familiar type mint vend-

ing machine. Its physical appearance represents the ordinary slot machine. Whenever mints are in the machine the player operates the lever after placing a nickel in it, and thereupon certain combinations appear on the dial of such machine. The player always receives a package of mints for his nickel. In addition to receiving a package of mints when certain combinations appear upon the dial of this machine, the player is thereby afforded varying numbers of free plays on such machine. No mints can be withdrawn from the machine upon these free plays, but by means of such free plays the dial on the machine revolves and certain combinations containing numerous sayings, and also the prediction of one's fortune, appear.

These machines cost $147.50 each, and the owner of this machine has purchased fifteen to be operated in Hamilton County. It further appears that there is nothing to prevent the proprietor from paying off upon these free games, although there is no proof that this was done by plaintiff in error. The district attorney general, who testified in the case, states that three or four instances where this was done, on similar machines, have come under his observation.

██ Under the title "Gaming and Prize Contests" we quote the following from the text in 24 Am. Jur., section 35:

"There are so many kinds of slot machines, differing so much in construction and operation and used for such varied purposes, that it is difficult to lay down any general rule fixing their status with reference to the question of gaming or gambling. A slot machine, it has been said, is not per se a gambling device, since it may be used or played upon for innocent purposes; and the

courts cannot, therefore, take judicial notice that every slot machine is a gambling device, since the use to which it is put must determine its character. In general, however, a slot machine which, in return for a coin deposited therein, dispenses merchandise of the value of such coin, accompanied at occasional and uncertain intervals by a varying amount of money, trade checks, or coupons, or more broadly, one which provides an element of chance, is a gambling device. . . .

"According to the generally prevailing opinion, where the return to the player is thus dependent on an element of chance, a slot machine is a gambling device, even though the player is assured of his money's worth of some commodity and, hence, cannot lose. Also, according to the great weight of authority a slot machine is not rendered innocuous by the fact that it indicates in advance of each deposit exactly what it will dispense, since it is considered that in such instances, the player gambles not on the immediate return for the coin he deposits, but on the hope or chance that the indicator will show a profit on his next play. . . .

"In some jurisdictions, slot machines are expressly brought within the purview of gambling statutes, and the mere keeping of such machine is declared a criminal offense, whether it is kept for gambling or not. In a number of cases, the machine was so constructed that upon the deposit of one of the metal trade checks which it had dispensed with the merchandise, it would operate in the same manner, with the exception that it would not deliver any merchandise, as when a coin was deposited. This feature, however, while condemned by nearly all the courts, has apparently not been considered as of controlling importance, the vice of the machine resulting

primarily from its operation with the coin. Further-
more, a machine which returns merchandise of the value
of the coin played therein and, in addition, a chance of
receiving a varying amount of checks which may be
used to play the machine for amusement only is a
gambling device, the right to continue the operation of
the machine for amusement being a thing of value within
statutes directed against gaming. According to some
cases, however, where the only additional premiums
offered are witty or humorous sayings, such a machine is
not a gambling device, since the player receives nothing
of value.''

The question is thus narrowed as to whether the right
to continue the operation of the machine for amusement
after receiving a package of mints is a thing of value
within statutes against gaming. The great weight of
authority holds that it is. See cases listed in note to the
foregoing text; also annotation in 81 A. L. R. 177, and
supplemental decisions in A. L. R. Blue Book.

 Our statutes are not directed against all and
every kind of slot machine, such as coin-operated vending
machines by which one may purchase shelled peanuts,
candy, chewing gum, cigarettes, telephone service, and
the like. If the machine in question were limited to the
delivery of a package of mints, it would have no element
of chance connected with it. It is this added inducement
of receiving something for nothing that arouses the
gambling instinct. As stated by the Supreme Court of
New Hampshire in *State* v. *Mint Vending Machine,* 85
N. H., 22, 154 A., 224, 226, a ''thing of value'' to be the
subject of gambling may be ''any 'thing' affording the
necessary lure to indulge the gambling instinct. Any
incitement which would impel the player to stake his

money on a chance of winning would produce the evil consequences at which the enactment is aimed.''

We dare say that but for this added allurement a mere vendor of mints would not expend $147.50 for such a machine. Neither are we oblivious of the fact that machines of this character are looked upon as noxious to the public morals and general welfare.

It is said, however, that in the unreported case of *Dan Keller* v. *C. J. Cornellison,* Davidson equity, decided at the December term, 1940, this court took a contrary view and, in effect, overruled *Painter* v. *State.* In that case it appeared that complainant had sued defendant to recover $147.50 for one of these machines sold him, but which he declined to accept upon the ground that it was a gambling machine. It was averred in the bill that it was not a gambling machine, and there was no allegation as to what use defendant intended to put it. The chancellor overruled the demurrer to the bill, being of the opinion that this machine, as described in the bill, was not a gambling device. In a *per curiam* opinion this court simply said:

''The Court is of opinion the machine as described is not a gambling device.

''Decree of the Chancellor is affirmed.''

That case was not seriously contested. The court was not sufficiently informed as to the method by which these machines are and can be used and operated to enable it to decide the question involved in this case. The decision, primarily, was based upon the fact that it did not appear from the bill the use to which said machine was to be put, which is determinative of its character under the authority quoted above, the result being that the court was unable to say, as a matter of law, that it was a

gambling device. It was not the intention of the court to overrule the case of *Painter* v. *State,* the court purposely refraining from reconsidering the question involved in that case.

In *Town of Centerville* v. *Burns,* 174 Tenn., 435, 126 S. W. (2d), 322, the court stated expressly that *Painter* v. *State,* was not in point, so that the decisions in those cases are not in conflict.

Upon further and maturer consideration, we feel constrained to adhere to the rule announced in the Painter case, the result being that the judgment of the trial court is affirmed.

### Concurring Opinion.

Mr. Chief Justice Green delivered the following concurring opinion.

I have not thought that the operation of a machine like the one involved in the manner herein appearing constituted a substantial offense against our gaming laws. See dissent in *Painter* v. *State,* 163 Tenn., 627, 45 S. W. (2d), 46, 81 A. L. R., 173. The majority of the Court think otherwise and the weight of authority outside the State is in accord with the majority. Cases like this are coming up at each term and the matter should be settled. I therefore yield my notions and concur in the judgment.

Vindication of slot machines does not impress me as a cause of sufficient merit to justify me in keeping up my dissent.