**JACK EISER SALES COMPANY, INC., Appellant–Plaintiff,**

v.

**Thomas WILSON, Prosecuting Attorney of Steuben County, Indiana, Appellee–Defendant.**

No. 76A04–0009–CV–370.

Court of Appeals of Indiana.

July 25, 2001.

Bradley Kim Thomas, Robert J. Hardy, Waterloo, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Janet L. Parsanko, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Jack Eiser Sales Company appeals the trial court's determination that its "Free Spin" machine is a gambling device.

We affirm.

*ISSUE*

Whether the trial court erred in finding the Free Spin machine to be a gambling device as defined by Indiana law.

*FACTS*

Eiser owns a number of Free Spin machines, purchased from a Tennessee company called World of Games. Eiser entered into lease agreements whereby the machines were placed in several taverns and a Moose lodge in Steuben County. The Steuben County Prosecutor declared the machines to be illegal gambling devices and seized them. Eiser brought this declaratory judgment action, asserting that the machine was a vending machine of collector cards "with a promotional game attachment" and "not a gambling device under Indiana law." (R. 10).

The trial court conducted a hearing, at which various witnesses testified on behalf of Eiser, and the Free Spin machine was demonstrated. Eiser argued to the trial court that the machine was simply a vending machine that sold sports cards, and that the free game was a promotion to promote the sale of cards.

A banner posted by the machine reads "FREE DRAW," "FREE SPIN," "INSTANT CASH PRIZES" and "COLLECTORS CARDS SOLD HERE." (R. 136). The banner further stated, "Test Your Skill," and advised, "No Purchase Necessary." *Id.* Official rules were posted by the machine and explained how to obtain a voucher to play the game without putting any money in the machine.

When one puts a dollar in the Free Spin machine, it ejects a sports card. The machine then allows the player to play the Free Spin video game, at the start of which 20 promotional credits—which are used to play the game—are shown in the lower left-hand corner of the game's video screen. The promotional credits are used to play the game as follows: on a screen containing three rows of three pictures, the rows begin to spin randomly in a fashion similar to a slot machine until the player pushes a button, at which point the spinning stops. Based upon the configuration in which the pictures stop, the player may earn prize credits—reflected in a point score in the upper right-hand corner. A player who earns prize credits may re-

deem the point score for cash at the rate of 5¢ per prize credit.

One may also play the game on the Free Spin machine without buying a card for a dollar by mailing a form and a stamped, self-addressed return envelope to Eiser.[1] This option is limited to one request per person per day. The applicant receives a voucher, and an operator at the location where the voucher is to be played keys the machine to allow a free play of the game. However, no sports card is obtained by this player.

The trial court found that there was "minimal, if any skill involved" in operating the machine, and the point score earned "var[ied] as a result of an element of chance." (R. 64). It further found that the score "var[ied] as a result of a number of factors, including the number of times the machine has been played." *Id.* The trial court cited two statutory definitions of a gambling device as follows:

> (1) A mechanism by the operation of which a right to money or other property may be credited, in return for consideration, as the result of the operation of an element of chance;
>
> (2) A mechanism that, when operated for a consideration, does not return the same value or property for the same consideration upon each operation.

Ind.Code § 35–45–5–1. It then concluded that the machine was a gambling device under either definition.

## DECISION [2]

The trial court issued findings of fact and conclusions of law upon its own motion pursuant to Indiana Trial Rule 52(A).[3] Therefore, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *Indiana Farmers Mut. Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1381 (Ind.Ct. App.1997), *trans. denied.* We may affirm a general judgment on any theory supported by the evidence introduced at trial. *Id.*

*AmJur* observes that many statutes "hav[e] for their object the prohibition of all or various kinds of gaming or gambling." 38 AM.JUR.2D *Gambling* § 1 (1999). As we noted in *American Legion Post # 113 v. State*, 656 N.E.2d 1190, 1194 (Ind. Ct.App.1995), *trans. denied*, "The Supreme Court has recognized that gambling involves the public welfare and that states have a substantial government interest in the health, safety and welfare of their citizens in relation to gambling activities." (citing *Posadas de Puerto Rico Assocs. v. Tourism Co.*, 478 U.S. 328, 341, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986)). Further, "Indiana has long recognized that valid laws may be enacted under the police power to protect the public health, public morals, public safety, or public welfare," and it "has a legitimate interest in regulating

---

1. The official rules list an 800 number to call for the address of the local distributor. A witness testified that upon calling this number, operated by World of Games, he thought a voucher for a free play might be sent to the caller "or they will direct them to" a local address to send a request. (R. 159). The rules indicate that one calling the number is simply given the address to which to send a request for a free play, along with a stamped, self-addressed envelope. The trial court found that to play "without purchasing a sports card," the player "must fill out a form and mail the form to a distributor with a self-addressed stamped envelope." (R. 65). Eiser does not challenge this finding.

2. We heard oral argument in this case on June 27, 2001, and commend the parties for their presentations.

3. Eiser's request for findings and conclusions was not written and was not made until after the submission of evidence.

gambling through its exercise of the police power." *Id.*

■ Indiana defines "gambling" as "risking money or other property for gain, contingent in whole or in part upon lot, chance, or the operation of a gambling device." Ind.Code. § 35–45–5–1. As noted above, a "gambling device" is defined to include either

(1) A mechanism by the operation of which a right to money or other property may be credited, in return for consideration, as the result of the operation of an element of chance;

or

(2) A mechanism that, when operated for a consideration, does not return the same value or property for the same consideration upon each operation.

*Id.*

Eiser first argues that no evidence supports the conclusion that the machine is a gambling device under either definition because of "the absence of the necessity of consideration." Eiser's Brief at 15. Specifically, Eiser contends that "for each operation of the machine for consideration the user received the same property, a collector card," and "the element of consideration is not present in the promotional game" because its initial promotional points have no cash value. Eiser's Brief at 12. It insists that pursuant to *Federal Communications Comm'n v. American Broadcasting Co.*, 347 U.S. 284, 294, 74 S.Ct. 593, 98 L.Ed. 699 (1954), "by providing individuals a form of entry that does not require purchase the element of consideration is removed." *Id.*

The court's discussion of the history of lottery litigation therein is particularly insightful.

Enforcing such legislation has long been a difficult task. Law enforcement officers, federal and state, have been plagued with as many types of lotteries as the seemingly inexhaustible ingenuity of their promoters could devise in their efforts to circumvent the law. When their schemes reached the courts, the decision, of necessity, usually turned on whether the scheme, on its own peculiar facts, constituted a lottery. So varied have been the techniques used by promoters to conceal the joint factors of prize, chance, and consideration, and so clever have they been in applying these techniques to feigned as well as legitimate business activities, that it has often been difficult to apply the decision of one case to the facts of another.

347 U.S. at 292–93, 74 S.Ct. 593.

We find that Eiser's argument that there was no consideration must fail because the evidence indicated the play of the machine does not end once the player has played his initial "free" game. Rather, the player is enticed to continue to play. "Consideration" is defined as "[s]ome thing of value." BLACK'S LAW DICTIONARY 300 (7th ed.). It is in that continued play that we find consideration.

The supreme court of Tennessee considered the case of a vending machine that looked like "the ordinary slot machine" and that for a nickel, "always" dispensed "a package of mints." *Heartley v. State*, 178 Tenn. 254, 157 S.W.2d 1, 2 (1941). In addition to receiving a package of mints, the player could play and receive "free plays." The court considered "whether the right to continue the operation of the machine for amusement after receiving a package of mints is a thing of value within the statutes against gaming." *Id.* at 3. It determined that if the machine "were limited to the delivery of a package of mints, it would have no element of chance connected with it." *Id.* However, it was the "added inducement of receiving something for nothing" that "aroused the gambling

instinct" and led "a player to stake his money on a chance of winning." *Id.*

Similarly, here, upon playing his "free game," in order to continue to play the machine, the player must risk the prize points that could be redeemed for cash. In other words, he stakes his points on a chance of winning more. Thus, the player gives something of value, or consideration. As our supreme court noted in *Tinder v. Music Operating, Inc.*, 237 Ind. 33, 142 N.E.2d 610, 616 (1957), the "incentive of unearned monetary gain" is "the distinction" of a machine's being found to operate "related to public morals and welfare."

At oral argument, Eiser asserted that the machine owner did not receive any consideration for the continued play. The assertion overlooks the fact that when the player uses the prize points, no cash need be paid out to the player for them. In the same vein, Eiser contends, without authority, that "consideration cannot appear in the middle of the process." Reply at 5. However, as we have already noted, it is the design of the device that entices the player to *continue* playing, thereby risking any prize points that came into being on the initial "free" spin. Were this not so, a different result might obtain.

Eiser next cites the "law of promotional schemes" and the means whereby promotional schemes "avoid becoming illegal lotteries." Eiser's Brief at 13. It discusses various such promotions by McDonald's and Pepsi, and a Mississippi case in which a machine vending $2 cards that provided 3 minutes of long distance telephone usage and a chance to win monetary prizes was held not to constitute a lottery. However, the argument fails to explain why the fact that certain promotions have been held not to constitute a lottery precludes the conclusion that the Free Spin machine is a gambling device under Indiana law.

According to *AmJur*, gambling statutes cover "three general categories of illegal gambling": lotteries, betting, and gambling devices. 38 Am.Jur.2d *Gambling* § 1 (1999). Generally, the " 'device' as that term is generally employed" in prohibitory statutes, "means the tangible means, instrument, contrivance, or thing with or by which money may be lost or won, as distinguished from the game itself." *Id.*, § 97. In the instant case, we hold the machine to be a gambling device. Thus, whether or not it is a lottery game [4] in the eyes of the law is of no moment.

We affirm.

NAJAM, J., and BARNES, J., concur.

---

4. Similarly, Eiser's argument in its reply brief to the effect that there was no "consideration sufficient to support a lottery" is unavailing. Reply Brief at 4.