**F.A.C.E. TRADING, INC., d/b/a Face Card Promotions, a Wisconsin Corp., Appellant–Plaintiff,**

v.

**Steve CARTER, et al., Appellee–Defendant.**

No. 02A04–0406–CV–337.

Court of Appeals of Indiana.

Jan. 20, 2005.

Transfer Denied April 28, 2005.

Donald C. Swanson, Jr., Fort Wayne, IN, Attorney for Appellant.

Colleen M. O'Brien, State Lottery Commission of Indiana, Indianapolis, IN, Attorney for Appellee.

**OPINION**

RILEY, Judge.

### STATEMENT OF CASE

Appellant–Plaintiff, F.A.C.E. Trading Inc., d/b/a Face Card Promotions, a Wisconsin Corporation (FACE), appeals the grant of summary judgment in favor of Appellees–Defendants, the Indiana Attorney General (Attorney General); the Prosecutor of the Alcohol & Tobacco Commission; the Commissioner of the Alcohol & Tobacco Commission; and, the Director of the Hoosier Lottery (Hoosier Lottery), (collectively, the Appellees), concluding that Ad–Tabs are an illegal gambling device pursuant to Indiana Code § 35–45–5–1.

We affirm.

### ISSUES

FACE raises two issues on appeal, which we restate as follows:

(1) Whether the trial court erred as a matter law that Ad–Tabs are an illegal gambling device pursuant to I.C. § 35–45–5–1; and

(2) Whether the trial court abused its discretion in granting the Appellees' Motion to Strike FACE's expert affidavits.

### FACTS AND PROCEDURAL HISTORY

FACE is a corporation whose primary business purpose is to sell and distribute Ad–Tabs. Ad–Tabs are two-sided cardboard cards that have a discount coupon on one side and a cash prize game (the game) on the other side. The game side of the Ad–Tab offers a colorful, thematic legend that reveals what combination of symbols will produce the indicated cash prizes, which range from one dollar to several

hundred dollars. The coupon side of the Ad–Tab contains a discount from one of several companies, as well as perforated tabs that a purchaser pulls up to reveal play symbols corresponding to the game. A card's play symbols indicate that a purchaser has won a cash prize if they match a prize winning combination of symbols designated on the game side of the Ad–Tab. FACE's Ad–Tab demonstration video, issued to all Ad–Tab vendors, directs vendors, upon loading the vending machine, to display the Ad–Tabs with the game side facing out.

The cost of an Ad–Tab is one dollar. To obtain an Ad–Tab an individual must insert a dollar bill, ranging from one to twenty, into the Ad–Tabs vending machine. An individual may then select one Ad–Tab for each one dollar he/she inserts into the vending machine. The Ad–Tab vending machine does not provide any change.

The coupon side of the Ad–Tab also includes, in fine print, a disclaimer notifying potential purchasers that no purchase is necessary for a chance to win a cash prize. If a potential purchaser wants a chance to win a cash prize and not pay for the Ad–Tab card, that person must either call a toll free number or write to FACE and ask for a chance to win a cash prize. Upon receipt of the free entry, FACE provides the individual with the Ad–Tab, however, the discount coupon is voided.

On October 10, 2001, FACE filed a Complaint for Declaratory Relief in the Allen Circuit Court against the Attorney General, requesting that its Ad–Tabs be exempt from Indiana's gaming law. On May 9, 2002, a bench trial was held and the trial court ordered that the Hoosier Lottery and the Alcohol & Tobacco Commission be joined as necessary parties. Thereafter, on June 17, 2002, FACE filed an Amended Complaint joining the Prosecutor of the Alcohol & Tobacco Commission, the Commissioner of the Alcohol & Tobacco Commission, and the Hoosier Lottery.

On August 19, 2003, FACE filed a Motion for Summary Judgment. Subsequently, on October 24, 2003, the Hoosier Lottery filed a Cross–Motion for Summary Judgment, as well as Motions to Strike FACE's Expert Affidavits of Frederick Anderson (Anderson) and Michelle Des Lauriers (Des Lauriers). On November 6, 2003, the remaining Appellees filed an adoption of the Hoosier Lottery's motions. After all parties waived hearing on the Summary Judgment motions, the trial court took the matter under advisement. On February 14, 2004, the trial court granted the Appellees Cross–Motion for Summary Judgment and denied FACE's Motion for Summary Judgment.

FACE now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Gambling Device*

FACE first contends that the trial court erred when it found, as a matter of law, that Ad–Tabs are an illegal gambling device. Specifically, FACE argues that Ad–Tabs are not an illegal gambling device because an individual may enter the game without risking any consideration, property, or money. We disagree.

We note that summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Fort Wayne Lodge, LLC. v. EBH Corp.*, 805 N.E.2d 876, 882 (Ind.Ct.App.2004). In reviewing a decision upon a summary judgment motion, we apply the same standard as the trial court. *Fort Wayne Lodge, LLC.*, 805 N.E.2d at 882. We do not reweigh the evidence designated by the parties. *Id.* Instead, we

liberally construe the evidence in the light most favorable to the non-moving party. *Id.*

The moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* Once this burden is met, the non-moving party must respond by setting forth specific facts demonstrating a genuine need for trial, and cannot rest upon the allegations or denials in the pleadings. *Id.* We review only the designated evidentiary material in the record, construing that evidence liberally in favor of the non-moving party, so as not to deny that party its day in court. *Id.*

As we noted in *American Legion Post # 113 v. State,* 656 N.E.2d 1190, 1194 (Ind. Ct.App.1995) (citing *Posadas de Puerto Rico Assocs. v. Tourism Co.,* 478 U.S. 328, 341, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986)), *trans. denied,* "[t]he Supreme Court has recognized that gambling involves the public welfare and that states have a substantial government interest in the health, safety and welfare of their citizens in relation to gambling activities." In this regard, "Indiana has long recognized that valid laws may be enacted under the police power to protect the public health, public morals, public safety, or public welfare," and it "has a legitimate interest in regulating gambling through its exercise of the police power." *Jack Eiser Sales Company, Inc. v. Wilson,* 752 N.E.2d 225, 227 (Ind.Ct.App.2001) (quoting *American Legion Post # 113,* 656 N.E.2d at 1194). Additionally, the Supreme Court has stated:

> Enforcing such legislation has long been a difficult task. Law enforcement officers, federal and state, have been plagued with as many types of lotteries as the seemingly inexhaustible ingenuity of their promoters could devise in their efforts to circumvent the law. When their schemes reached the courts, the decision, of necessity, usually turned on whether the scheme, on its own peculiar facts, constituted a lottery. So varied have been the techniques used by promoters to conceal the joint factors of prize, chance, and consideration, and so clever have they been in applying these techniques to feigned as well as legitimate business activities, that it has often been difficult to apply the decision of one case to the facts of another.

*Fed. Communications Co. v. Am. Broad. Co.,* 347 U.S. 284, 292–93, 74 S.Ct. 593, 98 L.Ed. 699 (1954).

In Indiana, "gambling" is defined as "risking money or other property for gain, contingent in whole or in part upon lot, chance, or the operation of a gambling device." I.C. § 35–45–5–1. A "gambling device" is defined to include either:

(1) A mechanism by the operation of which a right to money or other property may be credited, in return for consideration, as the result of the operation of an element of chance; or

(2) A mechanism that, when operated for a consideration, does not return the same value or property for the same consideration upon each operation.

*Id.* We note that the trial court did not specify under which of these subsections it found Ad–Tabs to be a gambling device. Therefore, we will examine each in turn.

Under subsection (1), in order for Ad–Tabs to be considered a gambling device, it must be such that (a) the operation of the Ad–Tabs may entitle a person to money or other property; (b) the opportunity for money or other property must be received in return for consideration; and (c) the opportunity for money or other property must arise as the result of the operation of an element of chance. *See Id.* In the

instant case, the Ad–Tabs advertise that an individual may "win cash" if they buy an Ad–Tab card. Moreover, FACE concedes that Ad–Tabs allow an individual to win money or property upon the basis of "chance." However, FACE now argues that no evidence supports the trial court's conclusion that Ad–Tabs are a gambling device because of the absence of consideration as required by the statute. *See Id.* Specifically, FACE contends that the element of consideration is removed because of the "no purchase necessary" disclosure on the coupon side of the Ad–Tab and on posters affixed to the dispensing machine, which allow a participant to call or write for a free game piece. FACE relies on *Federal Communications Commission,* 347 U.S. at 294, 74 S.Ct. 593, where the Supreme Court recognized that by "providing individuals a form of entry that does not require purchase, the element of consideration is removed."

■ Our review of the record reveals that FACE issues a video to all vendors describing what Ad–Tabs are and how vendors should load and operate the Ad–Tabs dispensing machine. The video demonstrates displaying the Ad–Tabs with the game side of the card facing out. Additionally, testimony reveals that the largest seller of Ad–Tabs in Indiana was never instructed to display posters or notices on the outside of the dispensing machine to alert purchasers that Ad–Tabs have a discount coupon on the other side of the card, or that they can receive a free Ad–Tab game without purchase by calling a toll-free number or writing to FACE. Although FACE claims that it is merely selling discount coupons, it is clear from the record that the real enticement is the game in which purchasers may win up to several hundred dollars. *See Jack Eiser,* 752 N.E.2d at 228.

Here, we find that the element of consideration is not eliminated merely because of the "no purchase necessary" print on the coupon side of the Ad–Tab. It is apparent that the opportunity to win money or other property arises specifically as the result of the operation of an element of chance. In particular, when a purchaser places money into the Ad–Tabs dispensing machine, they select an Ad–Tab based upon what type of game is displayed on each card, not what discount coupons are available. Moreover, the record clearly supports that when the cards are displayed with the game side facing out, purchasers would not even know what discount coupons are available. Because the record supports that consideration is necessary to win a cash prize, Ad–Tabs satisfy the requirements of a gambling device under subsection (1). *See* I.C. § 35–45–5–1. Nevertheless, we will still analyze subsection (2) of the statute. *Id.*

The second definition of a gambling device under Indiana Code § 35–45–5–1 states that a gambling device is a "mechanism that, when operated for a consideration, does not return the same value or property for the same consideration upon each operation." In *State v. Maillard,* 695 N.E.2d 637, 640 (Ind.Ct.App.1998), *trans. denied,* we held that "quarter slide" machines did not always return the same value or property for the same consideration upon each operation and were therefore "gambling devices" as prohibited by statute. Citing Indiana Code § 35–45–5–1, this court stated, "neither dispensing a ticket for each operation nor requiring skill for a more successful operation can alter the violation of the clear meaning of the statute prohibiting 'gambling devices.'" *Id.* at 641. Likewise here, Ad–Tabs do not always return the same value or property for the same consideration. We find that FACE's assertion that the consideration is for the purchase of a dis-

count coupon ignores the fact that the ensuing game can result in a player receiving an amount of money varying from zero to several hundred dollars per purchase.

Furthermore, FACE contends that Ad–Tabs are just promotional devices and that the game is similar to promotions run by companies such as McDonald's and Coca–Cola. Specifically, FACE argues that hundreds of chance promotions presently being conducted to support the sale of consumer products cannot be distinguished from the promotional methods utilized in connection with the sale of Ad–Tabs discount coupons. In response to this argument the trial court concluded:

> A distinction exists between promotion of a primary business of selling a meal or a drink for valuable consideration together with a chance to win a business related prize, in kind or, albeit, as a sweepstakes prize which attracts sales, and promotion of a non-primary business related and incidental activity for valuable consideration together with a chance to win a prize unrelated to either the primary business activity or attraction of sales. The difference in the distinction is in the essence of the product: [t]he former promotes sales of the primary business product, e.g., food, while the latter promotes the prize and the product (coupon) is unrelated to either the primary business purpose of the promoter, of the distributor, or of [FACE]. The court fails to discern any claim that [ ] [FACE] is engaged in the primary business of marketing for the businesses which advertise in the Ad–Tabs, or that [FACE]'s primary source of revenue is from those businesses as opposed to the sale of Ad–Tabs.

(Appellant's App. p. 15–16). We agree with the trial court's conclusion and find that because the purchase of an Ad–Tab does not return the same value upon each purchase, Ad–Tabs meet the requirements of a gambling device as specified in subsection (2). *See* I.C. § 35–45–5–1.

Because Ad–Tabs satisfy both subsections of the gambling device statute, we find that the trial court did not err in holding that Ad–Tabs are merely a subterfuge for a gambling device. *Id.* Therefore, we conclude that no genuine issue of material fact exists regarding whether Ad–Tabs is a gambling device. *Fort Wayne Lodge, LLC.*, 805 N.E.2d at 882. We thus affirm the trial court's grant of summary judgment in favor of the Appellees.

## II. *Motion to Strike*

Next, FACE contends that the trial court erred in granting the Appellees' motion to strike the expert affidavits of Anderson and Des Lauriers in support of FACE's motion for summary judgment. Specifically, FACE argues that the testimony of both experts was admissible because it offered extensive clarification concerning whether Ad–Tabs are gambling devices and thus, it was error for the trial court to exclude them without providing reason. We disagree.

The standard of review for admissibility of evidence is an abuse of discretion. *Blocher v. DeBartolo Properties Mgmt., Inc.*, 760 N.E.2d 229, 233 (Ind.Ct. App.2001). The trial court abuses its discretion only when its action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* Even if we find that the trial court erred in its ruling on the admissibility of evidence, this court will reverse only if the error is inconsistent with substantial justice. *Id.*

Indiana Rule of Evidence 702 provides for the admissibility of expert opinions. Rule 702 states:

> (a) If scientific, technical, or other specialized knowledge will assist the tri-

er of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

Evid. R. 702. As we observed in *Lytle v. Ford Motor Co.*, 696 N.E.2d 465, 469–70 (Ind.Ct.App.1998) (citing *Corbin v. State*, 563 N.E.2d 86, 92–93 (Ind.1990)):

[W]here an expert's testimony is based upon the expert's skill or experience rather than on the application of scientific principles, the proponent of the testimony must only demonstrate that the subject matter is related to some field beyond the knowledge of lay persons and the witness possesses sufficient skill, knowledge or experience in the field to assist the trier of fact to understand the evidence or to determine a fact in issue.

Further, in addition to asserting admissible facts upon which the opinion is based, an expert opinion affidavit must also state the reasoning or methodologies upon which it is based. *Thayer v. Vaughan*, 798 N.E.2d 249, 255 (Ind.Ct.App.2003). In light of the above, it is apparent that Indiana Evidence Rule 702 assigns to the trial court a "gatekeeping function" of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Lytle v. Ford Motor Co.*, 814 N.E.2d 301, 309 (Ind.Ct. App.2004).

■ Here, our review of the record reveals that both expert affidavits opined that Ad–Tabs were not gambling devices under Michigan law. Based on expert opinions, FACE argues that the affidavits will provide extensive assistance to the trier of fact in determining whether Ad–Tabs are gambling devices because Michigan and Indiana gambling statutes are precisely the same. Although the trial court provided no reason in its order as to why it struck the affidavits, our review clearly reveals that Michigan and Indiana gambling statutes are quite different[1]. Even if the expert opinions might have included special knowledge, here, their opinions clearly would not have assisted the trier of fact. *See* Evid. R. 702; *Lytle*, 696 N.E.2d at 469. Because the trial court's actions were neither clearly erroneous nor against the logic and effect of the facts and circumstances before the court, we find that the trial court did not abuse its discretion. *See Blocher*, 760 N.E.2d at 233.

### CONCLUSION

Based on the foregoing, we find that no genuine issue of material fact exists that Ad–Tabs are gambling devices, and therefore affirm the trial court's grant of summary judgment in favor of the Appellees. Additionally, we find that the trial court did not abuse its discretion in striking FACE's expert affidavits.

Affirmed.

CRONE, J., and ROBB, J., concur.

---

1. FACE contends that Indiana Code § 35–45–5–1 and Michigan Compiled Laws Annotated § 750.372 are "strikingly similar" and "nearly written verbatim."