Ruby Lee SMITH, Appellant,

v.

En Yu Jack YANG, Appellee.

No. 64A05–0501–CV–54.

Court of Appeals of Indiana.

June 23, 2005.

Jeffery Oliveira, Merrillville, for Appellant.

Randall J. Nye, Julie R. Murzyn, Beckman, Kelly & Smith, Hammond, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Ruby Lee Smith appeals from the trial court's grant of summary judgment in favor of En Yu Jack Yang in this negligence action. Smith presents a single issue for our review, namely, whether the trial court erred when it concluded that there is no genuine issue of material fact precluding summary judgment in favor of Yang.

We affirm.

### FACTS AND PROCEDURAL HISTORY

At approximately 2:00 p.m. on July 2, 2002, Smith was driving eastbound on U.S. 12 in Porter County, and Yang was driving westbound. Angela Williams was also driving westbound, two cars behind Yang, and she observed him driving slowly and "drifting between the center line and the white line." Appellant's App. at 158. But Williams never saw Yang cross the double yellow center line.

At some point, Smith crossed the double yellow center line while driving around a curve, and she struck Yang's automobile head-on. Smith sustained serious injuries and could not recall anything about how the accident occurred. Nonetheless, Smith filed a complaint for damages against Yang alleging that his negligence had caused the collision and her injuries.

Yang filed a summary judgment motion alleging that there was no genuine issue of material fact regarding whether his alleged negligence caused the accident. In her memorandum in opposition to Yang's summary judgment motion, Smith designated as evidence an accident reconstruction expert's affidavit stating that Yang crossed the center line first, which caused Smith to cross the center line in an effort to avoid striking Yang's automobile. Following a hearing, the trial court entered summary judgment in favor of Yang. The trial court did not enter findings and conclusions. This appeal ensued.

### DISCUSSION AND DECISION

When reviewing summary judgment, this court views the same matters and issues that were before the trial court and follows the same process. *Estate of Taylor ex rel. Taylor v. Muncie Med. Investors, L.P.*, 727 N.E.2d 466, 469 (Ind.Ct. App.2000), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Jesse v. Am. Cmty. Mut. Ins. Co.*, 725 N.E.2d 420, 423 (Ind.Ct.App. 2000), *trans. denied.* Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co., Inc.*, 727 N.E.2d 790, 792 (Ind.Ct.App.2000). If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Ledbetter v. Ball Mem'l Hosp.*, 724 N.E.2d 1113, 1116 (Ind. Ct.App.2000), *trans. denied.*

Smith contends that the affidavit of Stephan Neese, an accident reconstructionist, establishes a genuine issue of material fact

precluding summary judgment in Yang's favor. In particular, Neese avers that the facts of this case indicate that the so-called "faked left syndrome" led to the accident. Appellant's App. at 83. Applying that theory, Neese explains that Yang crossed the center line first, and Smith swerved to her left and crossed the double yellow center line in an attempt to avoid striking his vehicle. But, realizing that he had crossed the center line, Yang came back into his lane only to meet Smith's car head-on. There is no other designated evidence showing that Yang crossed the center line of the highway prior to the accident.

■ Again, the trial court did not enter findings and conclusions in support of summary judgment. But, in order to support its summary judgment entry, the trial court must have disregarded Neese's affidavit, which is the only designated evidence to support Smith's contention that Yang's negligence caused the accident. In essence, Smith asserts that the trial court abused its discretion when it disregarded Neese's affidavit. We cannot agree.

■ Where expert testimony is advanced to establish causation, summary judgment is properly entered in favor of the defendant where that testimony fails to meet the admissibility requirements of Indiana Evidence Rule 702.[1] *Lytle v. Ford Motor Co.,* 696 N.E.2d 465, 468 (Ind.Ct. App.1998), *trans. denied.* The standard of review for admissibility of evidence is an abuse of discretion. *F.A.C.E. Trading, Inc. v. Carter,* 821 N.E.2d 38, 43 (Ind.Ct. App.2005), *trans. denied.* The trial court abuses its discretion only when its action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* Even if we find that the trial court erred in its ruling on the admissibility of evidence, this court will reverse only if the error is inconsistent with substantial justice. *Id.*

■ Indiana Evidence Rule 702 provides that:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

In determining whether scientific evidence is reliable, the trial court must determine whether such evidence appears sufficiently valid or, in other words, trustworthy, to assist the trier of fact. *West v. State,* 805 N.E.2d 909, 913 (Ind.Ct.App.2004), *trans. denied.* In so doing, the trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue. *Lytle v. Ford Motor Co.,* 814 N.E.2d 301, 309 (Ind.Ct.App.2004), *trans. denied.*

■ Our supreme court has declared that "there is no specific 'test' or 'set of prongs' which must be considered in order to satisfy Indiana Evidence Rule 702(b)." *West,* 805 N.E.2d at 913 (quoting *McGrew v. State,* 682 N.E.2d 1289, 1292 (Ind.1997)). Indiana courts may consider the five factors set out by the United States Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 593–94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993):(1) whether the

---

1. Contrary to Smith's assertion, a motion to strike an expert's affidavit is not a prerequisite to a trial court's determination under Evidence Rule 702.

theory or technique at issue can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted within the relevant scientific community. While *Daubert* is not binding upon the determination of issues under Indiana Evidence Rule 702, we have acknowledged the utility of applying the five factors. *See Steward v. State*, 652 N.E.2d 490, 498 (Ind.1995); *West*, 805 N.E.2d at 914.

In this case, Neese's affidavit provides in relevant part as follows:

1. I am an expert in the field of Accident Reconstruction and am ACTAR Certified (Accredited Commission of Traffic Accident Reconstructionists) . . . [a] world-wide field recognized accrediting board; and have been educated at some of the premier learning facilities in the field of Traffic Accident Reconstruction. My curriculum vitae is attached.

2. I have reviewed the facts and evidence in the matter and case of Plaintiff Ruby Lee Smith and Defendant En Yu Jack Yang, and have inspected, photographed and measured the scene as part of my analysis to assist me to render certain opinions. I have reviewed photographs taken at the scene of the vehicles in their final rest positions and the roadway condition immediately following the crash, [and] photographs of the Smith vehicle taken after the vehicle was removed from the scene. I have also reviewed the deposition testimonies of En Yu Jack Yang, Angela Williams and Officer George Gonzalez.

3. The impact between the Yang vehicle and the Smith vehicle did occur in the westbound lane of highway U.S. 12. This is based on the damage analysis using the described photographs, my scene inspection and measurements, scaled scene diagram, vehicle dimensions, collision diagram and roadway configuration. My analysis concludes that Ruby Lee Smith was left of center at the time of impact by approximately 3 feet.

\* \* \*

With the collision described as a head-on collision, the area of overlap between the fronts of the two vehicles is only about two feet and not a typical one-hundred percent overlap head-on collision. This places the Yang vehicle only about eighteen inches to the north of the double yellow line at impact.

5. Mr. Yang's testimony of his steering back to the right and Angela Williams' description of the movements leading up to the crash along with the impact being close to the center line are all *factors showing the Yang vehicle was left of center before Ruby Lee Smith went left of center to avoid his vehicle. This condition sets up a scenario commonly referred to as "faked left" syndrome. This syndrome is seen near curves and/or hill crests where an initial vehicle enters the area left of center and the other driver steers to the left, now being left of center in avoidance, when the initial vehicle steers back to the right and a head-on collision occurs in the initial vehicle's traveling lane.*

*The "faked left" syndrome is recognized in the accident reconstruction world and a written article first appeared as early as February, 1988 in the "Law and Order" periodical. This author and article has been reviewed and accepted as a reliable authority in the accident reconstruction arena. In this article the author reviews the process to determine a "faked left" syndrome.*

*That same process was applied in this case.* In this case a collision diagram was prepared indicating the force thrust direction and damage profiles. This process determines the maximum engagement between the vehicles.

The tire mark documented by the investigating officer and the gouge is the physical evidence used to determine the location [in] the roadway where the maximum engagement took place. The collision diagram was then placed on the scaled scene diagram.

6. Officer Gonzalez drew the tire mark in the police report diagram as being curved. In his deposition testimony he further describes the 33.6–feet skid mark as being curved. *This further gives credence of this "fake[d] left syndrome" in this situation.*

In an emergency braking situation a skid mark would only be straight and not curved. Physics does not allow a skidding vehicle to curve while skidding on a flat plain. Also, a vehicle that is skidding in an emergency situation usually leaves more than one skidding tire mark. In this instance the investigating officer did not recognize or document any other tire marks attributed to the Smith vehicle.

This single curved tire mark is consistent with Ruby Lee Smith initiating a hard steer to the right during an emergency evasive maneuver. As this steering maneuver develops the weight of the Smith vehicle is transferred to the left front corner causing heat to build up resulting in a single and curved tire mark.

\* \* \*

... [T]he evidence shows [Smith] saw the Yang vehicle left of center before Mr. Yang saw her vehicle and Ruby Smith went left of center to avoid the Yang vehicle. The curved tire mark is further evidence that she steered back to the right to avoid the Yang vehicle returning to its proper lane.

9. Mr. Yang's sworn testimony that he turned into the gravel is not consistent with the physical evidence. The only gravel area at this location is the gravel shoulder. In this area the lane widths are about ten-and-a-half feet. The right side of his vehicle, at impact was at least four-and-a-half feet from the westbound white fog line. This distance was determined from the vehicle dimensions, scene measurements, scaled scene diagram, collision diagram, scene photographs and vehicle dynamics of the vehicles throughout and after the collision. With only an 18–24 inch overlap between the front ends of the two vehicles and the gouge at three feet from the yellow line, his vehicle would be within eighteen-inches of the yellow line. The Yang vehicle only reached the gravel shoulder after his vehicle spun, as a result of the collision, and came to rest on the gravel shoulder as indicated by the mound of gravel found on the westbound shoulder near the yellow arrow sign.

10. My final conclusion is, given the time Mr. Yang had, his vehicle could have been entering the curve, left of the double yellow center line, as much as four-and-a-half feet. Traveling at 35–40 mph Mr. Yang could only have steered his vehicle a maximum of six feet to the right and returned fully back into the westbound lane in the time available to him before impact. This is based on the described perception/react time, scene measurements, scaled scene diagram, physical evidence at the scene, scene photographs, collision diagram and a lane change formula accepted and com-

monly used in the accident reconstruction field.

Appellant's App. at 81–86 (emphases added).

We cannot say that the trial court abused its discretion when it disregarded Neese's affidavit. There is a dearth of evidence showing the reliability of the so-called "faked left syndrome." Applying the *Daubert* factors, we observe that Smith has not presented any evidence regarding whether the theory can or has been tested. And the evidence does not establish that the theory has been subjected to substantial peer review. According to Neese, there is only one article discussing the theory, and it was published in 1988. There is no evidence regarding the circulation of the periodical in which it appeared. While Neese states that the "author and article has been reviewed and accepted as a reliable authority in the accident reconstruction arena," there is no objective evidence to support that statement.[2]

Further, Smith has not presented any evidence regarding the rate of error or the standards controlling the application of the faked left syndrome. And the only evidence that the theory has general acceptance within the field of accident reconstruction is Neese's statement as set out above. Again, there is no objective evidence regarding the theory's general acceptance in the field. Indeed, the investigating officer who prepared the diagram of the scene in the accident report testified that he had never heard of the faked left syndrome. And, as we have already noted, the only documentation of the theory is a single article appearing in a periodical published seventeen years ago. Finally, Neese does not state whether he has been trained in the application of this theory or whether he has ever applied the theory before doing so in this case.

The only evidence showing that Yang crossed the center line prior to the accident is Neese's affidavit. The Smiths did not designate sufficient evidence to show that the faked left syndrome, upon which Neese relies in formulating his opinion, is a reliable scientific theory under Indiana Evidence Rule 702. Thus, we cannot say that the trial court abused its discretion when it disregarded that affidavit, and we conclude that the trial court did not err when it entered summary judgment in favor of Yang.

Affirmed.

SULLIVAN, J., and RILEY, J., concur.

---

**2.** That is not to say that objective evidence to support any of the elements is required. Rather, given the scant evidence supporting any of the five *Daubert* factors, taken as a whole, we find the lack of objective evidence that much more significant.