The **ESTATE OF Matthew DYER, Betty Dyer, and Jerry Dyer, Parents of Matthew Dyer, Appellants–Plaintiffs,**

v.

**Thomas DOYLE, Individually, and as an Employee of Orkin Exterminating Co., Inc. and its Parent Corporation, Rollins, Inc., Appellees–Defendants.**

No. 53A05–0507–CV–396.

Court of Appeals of Indiana.

July 27, 2007.

David J. Colman, Elizabeth Ann Cure, Colman & Cure, Bloomington, IN, Attorneys for Appellants.

William H. Kelley, Darla S. Brown, Kelley, Belcher & Brown, Bloomington, IN, Attorneys for Appellees.

## OPINION

CRONE, Judge.

### Case Summary

The Estate of Matthew Dyer ("Dyer"), Betty Dyer, and Jerry Dyer (collectively, "the Estate") appeal the negative judgment on their wrongful death claim against Thomas Doyle, individually, and as an employee of Orkin Exterminating Co., Inc. ("Orkin"), and its parent corporation, Rollins, Inc. ("Rollins") (collectively, "Defendants"). We reverse and remand for a new trial.

### Issues

The Estate raises four issues, which we restate as follows:

I. Whether the trial court abused its discretion by admitting medical records of a passenger in Dyer's automobile;

II. Whether the trial court abused its discretion by admitting testimony of Doyle's expert witness, Joseph Badger, regarding the "faked left syndrome";

III. Whether the trial court abused its discretion by instructing the jury regarding sudden emergency; and

IV. Whether Dyer's speed could be an intervening or proximate cause of his death.

### Facts and Procedural History

The relevant facts follow. On March 16, 2000, Dyer was killed in an automobile accident that occurred when the vehicle he was driving was struck by a vehicle driven by Doyle during the course of Doyle's employment with Orkin. Ben Eads was a passenger in Dyer's vehicle at the time of the accident.

On July 12, 2001, the Estate filed a wrongful death claim against Doyle, Orkin, and Rollins. During the jury trial, the Estate called Eads as a witness. Eads testified that Dyer's vehicle was traveling at forty to forty-five miles per hour. According to Eads, when Dyer's vehicle reached the crest of a hill on the county road, Doyle's oncoming vehicle was "about half way in [Dyer's] lane." Tr. at 258. Dyer swerved "real hard to the right

and there was an impact." *Id.* at 259. During cross examination, the Defendants asked Eads whether he recalled making certain deposition testimony regarding statements he had made to hospital personnel immediately after the accident. The Estate objected to discussion of Eads's medical records, but the trial court allowed the questioning as impeachment.

At the start of the Defendants' evidence, the Defendants sought to introduce Eads's medical records into evidence. The Estate again objected to the admission of the medical records based upon hearsay in the records, and the Defendants argued that the medical records were admissible under the business records exception to the hearsay rule. The trial court admitted the medical records over the Estate's objection.

The Estate also called Indiana State Trooper John Evans, an accident reconstructionist, who testified that his investigation revealed that Doyle was "left of center in the other vehicle's lane of travel when the accident occurred." Tr. at 411. Trooper Evans testified that speed was not a factor in the accident. The Estate also called Gary Barnett, an accident reconstructionist, who testified that the accident was caused when Doyle's vehicle crossed the centerline into Dyer's path. Barnett estimated that Doyle's vehicle was traveling at twenty-five to thirty-two miles per hour, while Dyer's vehicle was traveling at forty-three to fifty-two miles per hour.

The Defendants called Joe Badger as an expert witness. During Badger's testimony, the Defendants sought to admit an article written by Badger entitled, "Investigating The Faked Left Syndrome." Exh. 7. The Estate objected on relevancy grounds, and the trial court overruled the objection. The Estate also objected to Badger testifying regarding the faked left syndrome and its application to the acci-

dent at issue, but the trial court overruled the objection. Badger testified that the faked left syndrome occurs when two vehicles are approaching each other from opposite directions, the first vehicle crosses the centerline, the second vehicle swerves left into the lane vacated by the first vehicle, and the first vehicle swerves back into its own lane, resulting in an accident. Badger testified that the faked left syndrome "may apply in this situation." Tr. at 631.

The Defendants also called Nicholas Tumbas, an accident reconstructionist, who testified that Dyer's vehicle was "fully in its lane at the time of impact," that Doyle's vehicle was "almost entirely across the unmarked center of the roadway at the time of impact" and was traveling at about thirty-two miles per hour, and that Dyer's vehicle was traveling at about sixty-one miles per hour. *Id.* at 695. On cross examination, Tumbas testified that the faked left syndrome did not occur in this accident. The Defendants also called Dr. Bill Smock, who testified that Dyer would not have died if his vehicle had been traveling at the thirty-five-mile-per-hour speed limit. The Estate did not object to this testimony.

The trial court instructed the jury that it could find Doyle was not negligent if he proved by a preponderance of the evidence that he was confronted with a sudden emergency not of his own making, that he did not have sufficient time to deliberate, and that he "exercised such care as an ordinarily prudent person would exercise when confronted with a similar emergency, even if it appears later that a different course of action would have been safer." Appellants' App. at 20. The Estate objected that the instruction was not supported by the evidence in the case.

The trial court also instructed the jury that the Estate had the burden of proving

the following by a preponderance of the evidence: (1) that Doyle was negligent; (2) that Dyer was killed; and (3) that "the negligence of [Doyle] was the proximate cause of the death." Appellees' App. at 43. Further, the jury was instructed that it could find for the defendants if Doyle was not at fault or if Dyer's fault was greater than fifty percent. The trial court also instructed the jury on intervening causes. The Estate did not object to these instructions.

During closing arguments, the Defendants argued that Dyer's speed was a proximate cause of his death and that Doyle was confronted with a sudden emergency, which resulted in a faked left syndrome accident. The jury returned a verdict for the Defendants. The jury's verdict could have been based upon either a finding that Doyle was not at fault or a finding that Dyer was greater than fifty percent at fault for his death. The Estate now appeals.

## Discussion and Decision

### I. Admission of Eads's Medical Records

The first issue is whether the trial court abused its discretion by admitting Eads's medical records. The admission of evidence is left to the sound discretion of the trial court, and we will not reverse that decision except for an abuse of that discretion. *Mann v. Russell's Trailer Repair, Inc.*, 787 N.E.2d 922, 926 (Ind.Ct.App. 2003), *trans. denied.* An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

Eads testified that he and Dyer were driving down Ratliff Road and "as we came up over the hill there was a vehicle probably about half way in our lane or so and still coming over." Tr. at 258. Dyer "swerved real hard to the right and there was an impact." *Id.* at 259. During cross

examination, the Defendants asked Eads whether he recalled making certain deposition testimony as follows:

Q: . . . . Do you recall being asked the following questions, page thirty-three talking about being taken to the hospital immediately after the accident? Question: Do you recall indicating to them that you had encountered a truck coming at you and Matt over the middle line and Matt lost control and fish tailed and ended up with the driver's side getting the impact from the truck? And then there are various objections and your answer was; Answer: I do not recall stating that exactly. I do recall saying that the truck was coming at us over the center line and he had simply tried to swerve and we impacted. Do you recall giving that answer to that questions [sic]?

A: Yes, sir.

*Id.* at 275–76. The Estate objected to discussion of Eads's medical records, but the trial court allowed the questioning as impeachment.

At the start of the Defendants' evidence, the Defendants sought to introduce Eads's medical records, which were prepared by Dr. Illman. The medical records in question contain the following:

**HISTORY OF PRESENT ILLNESS:** Patient is a 16 year-old who was involved in a motor vehicle accident. He was an unrestrained front seat passenger. The driver of the vehicle was killed instantly. According to the patient they were coming up over a steep hill when they encountered a truck coming at them over the mid line. The driver lost control and actually probably fished [sic] tailed, ended up with the driver side getting the impact from the truck. The

patient was not thrown out. I do not believe the driver was either. The passenger got out immediately. That is our current patient and he has come in by ambulance to be evaluated. He is the one who went for help.

Exh. 2. The Estate again objected to the admission of the medical records based upon hearsay in the records, and the Defendants argued that the medical records were admissible under the business records exception to the hearsay rule. The trial court admitted the medical records over the Estate's objection.

According to the Estate, the trial court abused its discretion by admitting the medical records without Dr. Illman testifying. The Estate claims that it had no opportunity to cross examine Dr. Illman regarding the accuracy of the above statement or his qualifications. The Defendants argue that the medical records were admissible under both the rules for impeachment and the business records exception of the hearsay rule.

■ We first address whether Eads's statement was admissible under the impeachment rules. Indiana Evidence Rule 613(b) governs the admission of extrinsic evidence of a prior inconsistent statement of a witness for impeachment purposes and provides:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to statements of a party-opponent as defined in Rule 801(d)(2).

"[W]hen a prior inconsistent statement is used to impeach a witness, it is not hearsay because the statement is not used to prove the truth of the matter asserted."

*Martin v. State*, 736 N.E.2d 1213, 1217 (Ind.2000). Eads's statement to the emergency room doctor is arguably inconsistent with his testimony and could be used for impeachment purposes. *See, e.g., id.* at 1217 (holding that a witness's prior inconsistent statement to an officer could be used to impeach her).

Generally, prior inconsistent statements are used to impeach, not as substantive evidence of the matter reported. *Young v. State*, 746 N.E.2d 920, 926 (Ind.2001). However, the Estate did not request that the jury be admonished that the statement was only to be used to judge Eads's credibility. *See, e.g., Martin*, 736 N.E.2d at 1218 (holding that a prior inconsistent statement was admissible and the defendant failed to ask for a limiting instruction that the jury could not use the statement as substantive evidence).

Because Eads's statement was admissible for impeachment purposes, we now address whether the documents containing Eads's statement, the medical records, were admissible under the business records exception to the hearsay rule. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay is not admissible except as provided by law or by the rules of evidence. Ind. Evidence Rule 802.

Indiana Evidence Rule 803(6) governs the admission of business records and provides that the following are not excluded by the hearsay rule, even though the declarant is available as a witness:

Records of Regularly Conducted Business Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by,

or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. The term "business" as used in this Rule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The Estate's argument concerning the business records exception is based upon *Wilkinson v. Swafford*, 811 N.E.2d 374 (Ind.Ct.App.2004), *abrogated on other grounds by Willis v. Westerfield*, 839 N.E.2d 1179 (Ind.2006). In *Wilkinson*, a party attempted to admit a report by Dr. Michael Berkowitz through the testimony of his medical partner, Dr. Rick Sasso. 811 N.E.2d at 388. The report contained the patient's medical history, Dr. Berkowitz's medical opinions, and the proposed treatment plan. *Id.* at 390. Dr. Sasso attempted to testify about the contents of Dr. Berkowitz's report, even though Dr. Sasso did not prepare the report, Dr. Sasso was not involved in the examination that occurred on January 27, 1999, and the last time Dr. Sasso treated the patient was in late 1998, several months before Dr. Berkowitz prepared the report. *Id.* The party claimed that the report was admissible under the business record exception to the hearsay rule, but the trial court excluded the report. *Id.* at 388.

On appeal, we held that the report met the criteria of a business record under Evidence Rule 803(6) and therefore was not excluded by the hearsay rule. *Id.* at 390. However, even records that are not

excluded by the hearsay rule must also be otherwise admissible. *Id.* We explained that " 'hospital records may not be excluded as hearsay simply because they include opinions or diagnoses. But, and this is a substantial but, for medical opinions and diagnoses to be admitted into evidence, they must meet the requirements for expert opinions set forth in [Evidence Rule] 702.' " *Id.* at 391 (quoting *Schaefer v. State*, 750 N.E.2d 787, 793 (Ind.Ct.App. 2001)) (emphasis in *Wilkinson* removed). We held that no foundation was laid to show that Dr. Berkowitz was an expert or that his opinions were admissible. *Id.* Further, " 'expressions of opinion within medical or hospital records historically have not been admissible under the business records exception because their accuracy cannot be evaluated without the safeguard of cross-examination of the person offering the opinion.' " *Id.* (quoting *Schaefer*, 750 N.E.2d at 794). Because Dr. Berkowitz was not deposed and did not testify at trial, the party was seeking to have Dr. Berkowitz's medical opinions admitted without providing the opposing party a chance to cross-examine him on his qualifications or basis for those opinions. *Id.* at 391–92. Consequently, we concluded that the trial court did not abuse its discretion when it excluded Dr. Berkowitz's report. *Id.* at 392.

■ Here, Dr. Illman did not testify and was not subject to cross examination. However, the relevant portion of Eads's medical records do not concern Dr. Illman's opinion or diagnosis. Rather, in the relevant portion of the medical records, Dr. Illman is simply restating information provided by Eads as to how he was injured. Thus, *Wilkinson* is inapplicable. The trial court did not abuse its discretion by admitting the medical records. *See, e.g., Nash v. State*, 754 N.E.2d 1021, 1025 (Ind.Ct.App.2001) (holding that the portion

of the medical records containing the victim's statements to the emergency room nurse that she had been raped by her husband were admissible under the records of regularly conducted business activity exception to the hearsay rule), *trans. denied.*[1]

### II. Admission of Testimony Regarding Faked Left Syndrome

■ The next issue is whether the trial court abused its discretion by admitting testimony of Doyle's expert witness, Joseph Badger, regarding the faked left syndrome. Indiana Evidence Rule 702 governs the admission of expert testimony and provides:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

"The trial court's determination regarding the admissibility of expert testimony under Rule 702 is a matter within its broad discretion, and will be reversed only for abuse of that discretion." *Sears Roebuck and Co. v. Manuilov,* 742 N.E.2d 453, 459 (Ind. 2001).

During Badger's testimony, the Defendants sought to admit an article written by Badger entitled, "Investigating The Faked Left Syndrome." Exh. 7. The Estate objected on relevancy grounds, and the trial court overruled the objection. The Estate also objected to Badger testifying regarding the faked left syndrome and its application to the accident at issue, but the trial court overruled the objection. Badger testified that the faked left syndrome occurs when two vehicles are approaching each other from opposite directions, the first vehicle crosses the centerline, the second vehicle swerves left into the lane vacated by the first vehicle, and the first vehicle swerves back into its own lane resulting in an accident. Badger testified that the faked left syndrome "may apply in this situation." Tr. at 631.

■ The Estate argues that there was no evidence to support the use of the faked left syndrome in this case. "In determining whether scientific evidence is reliable, the trial court must determine whether such evidence appears sufficiently valid or, in other words, trustworthy, to assist the trier of fact." *Smith v. Yang,* 829 N.E.2d 624, 626 (Ind.Ct.App.2005). "In so doing, the trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* According to the Estate, the faked left syndrome could not be applied to the facts in issue.

Badger's opinion that the faked left syndrome may have been applicable was based upon the following evidence. First, Eads's medical records contained the following: "According to the patient they were coming up over a steep hill when

---

1. The Estate also argues in its reply brief that it is unclear from whom Dr. Illman received his information included in the history. Consequently, the Estate argues that the medical record lacked a sufficient indicia of reliability. Because the Estate made this argument for the first time in its reply brief, the argument is waived. *See Naville v. Naville,* 818 N.E.2d 552, 553 n. 1 (Ind.Ct.App.2004) ("A party may not raise an argument for the first time in its reply brief."); *see also* Ind. Appellate Rule 46(C) ("No new issues shall be raised in the reply brief.").

they encountered a truck coming at them over the mid line. The driver lost control and actually probably fished [sic] tailed, ended up with the driver side getting the impact from the truck." Exh. 2. Eads testified that when Dyer's vehicle reached the crest of a hill on the county road, Doyle's vehicle was "about half way in [Dyer's] lane." Tr. at 258. Dyer swerved "real hard to the right and there was an impact." *Id.* at 259. Additionally, Doyle testified that he saw a car coming over the crest of the hill at a high rate of speed and that the car was "swerving out of control." *Id.* at 323.

However, for the faked left syndrome to be applicable, there would have to be evidence that Dyer's vehicle was in Doyle's lane and that Doyle drove into Dyer's lane to avoid a collision. There was no physical evidence or testimony demonstrating that either of these events occurred. Neither Eads's medical records nor Doyle's testimony indicate that Dyer was ever in Doyle's lane. Badger admitted during cross examination that there was no evidence that Dyer was ever in Doyle's lane. There must be some evidence other than the opinion itself that there was a "faked left" occurrence for the opinion to pass muster. Under these circumstances, we conclude that the trial court abused its discretion by admitting evidence concerning the faked left syndrome.[2]

### III. Sudden Emergency Instruction

■ The next issue is whether the trial court abused its discretion by instructing the jury regarding sudden emergency. First, we note that Indiana Appellate Rule 46(A)(8)(e) provides: "When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto." The Estate did not set out the instruction or its objections verbatim in the argument section of its appellants' brief.[3] Ordinarily, an appellant waives the issue by failing to comply with this appellate rule. *See, e.g., Collins v. State,* 509 N.E.2d 827, 831 (Ind.1987) (holding under the prior appellate rule that the defendant waived the issue by failure to comply with Ind. Appellate Rule 8.3(A)(7), which required a verbatim copy of the refused instruction and the verbatim objections thereto, if any, in the argument section of the brief).

■ Waiver notwithstanding, we note that the purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Centennial Mortgage, Inc. v. Blumenfeld,* 745 N.E.2d 268, 278 (Ind.Ct.App. 2001). In reviewing a trial court's decision to give or refuse a tendered instruction, we consider whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions.

---

**2.** Pursuant to Evidence Rule 702(b), "[e]xpert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable." We previously held that the science behind the faked left syndrome is dubious. *See, e.g., Yang,* 829 N.E.2d at 629. The article written by Badger entitled "Investigating The Faked Left Syndrome" is not a scientific study of the syndrome. Exh. 7. Although the Estate waived this argument by failing to

object on this basis, *Burnett v. State,* 815 N.E.2d 201, 208 (Ind.Ct.App.2004), we reiterate our concern with the reliability of the faked left syndrome.

**3.** The Estate concedes that it left out the verbatim statements in its appellants' brief and included the necessary verbatim statements in its reply brief. *See* Appellants' Reply Br. at 8.

*Wal–Mart Stores, Inc. v. Wright,* 774 N.E.2d 891, 893 (Ind.2002). The trial court has discretion in instructing the jury, and we will reverse on the last two issues only when the instructions amount to an abuse of discretion. *Id.* A party seeking a new trial on the basis of an improper jury instruction must show a reasonable probability that its substantial rights have been adversely affected. *Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 944 (Ind.2001).

■ The trial court instructed the jury in pertinent part as follows:

> Thomas Doyle claims he was not negligent because he acted with reasonable care in an emergency situation. Thomas Doyle was not negligent if he proves the following by a preponderance of the evidence;
>
> 1. He was confronted with a sudden emergency;
>
> 2. The emergency was not of his own making;
>
> 3. He did not have sufficient time to deliberate; and
>
> 4. He exercised such care as an ordinarily prudent person would exercise when confronted with a similar emergency, even if it appears later that a different course of action would have been safer.

Appellants' App. at 20. The Estate objected that the instruction was not supported by the evidence in the case. The Defendants then argued in closing arguments that Doyle was confronted with a sudden emergency, which resulted in a faked left syndrome accident.

On appeal, the Estate concedes that the instruction is a correct statement of the law and that it was not covered by other instructions. However, the Estate contends that the instruction was not supported by the evidence in the record be-cause the alleged sudden emergency was the faked left syndrome and the faked left syndrome does not apply to the accident in question. As discussed *supra,* no evidence was presented to support the applicability of the faked left syndrome, and the trial court abused its discretion by admitting the testimony regarding the faked left syndrome. Consequently, we conclude that the trial court abused its discretion by instructing the jury regarding sudden emergency. *See, e.g., Collins v. Rambo,* 831 N.E.2d 241, 249 (Ind.Ct.App.2005) (holding that trial court erred by instructing jury regarding sudden emergency). We address the ramifications of this abuse of discretion below.

### IV.  Dyer's Speed as Intervening or Proximate Cause of Dyer's Death

■ The final issue is whether Dyer's speed could be an intervening or proximate cause of Dyer's death. The Estate phrases this issue as follows: "As a matter of law, speed should not be available as an intervening cause and, thereby, absolve defendant of liability when the defendant drives left of center and is the sole cause of the accident." Appellants' Br. at 14. In effect, the Estate is arguing that Dyer's speed could not be an intervening or proximate cause of Dyer's death. *See, e.g.,* Ind.Code § 9–19–10–7 (providing that a front-seat passenger's failure to wear a seatbelt does not constitute fault and cannot be used to mitigate damages).

Indiana Appellate Rule 46(A)(8)(b) provides:

> The argument must include for each issue a concise statement of the applicable standard of review.... In addition, the argument must include a brief statement of the procedural and substantive facts necessary for consideration of the issues presented on appeal, including a state-

ment of how the issues relevant to the appeal were raised and resolved by any Administrative Agency or trial court.

The Estate does not include a statement in its appellants' brief regarding how this issue was raised below or resolved by the trial court. In fact, our review of the record reveals that both the Estate's expert, Barnett, and the Defendants' expert, Tumbas, testified without objection regarding Dyer's speed. Also, Dr. Smock testified, without any objection from the Estate, that Dyer would not have died if his vehicle had been traveling at the thirty-five-mile-per-hour speed limit.

■ Additionally, the trial court instructed the jury that the Estate had the burden of proving the following by a preponderance of the evidence: (1) that Doyle was negligent; (2) that Dyer was killed; and (3) that "the negligence of [Doyle] was the proximate cause of the death."[4] Appellees' App. at 43. Further, the jury was instructed that it could find for the defendants if Doyle was not at fault or if Dyer's fault was greater than fifty percent. The trial court also instructed the jury as follows regarding intervening causes:

> An intervening cause is an independent event, not reasonably foreseeable, which completely breaks the connection between the defendant's negligent act and the plaintiff's injury. An intervening cause breaks the chain of events so that the defendant's original negligent act is not a proximate cause of the plaintiff's injury in the slightest degree.

Appellees' App. at 47. The Estate did not object to these instructions. During clos-

ing arguments, the Defendants argued, without any objection from the Estate, that Dyer's speed was the proximate cause of his death.

We conclude that the Estate waived any argument that Dyer's speed could not be an intervening or proximate cause of Dyer's death by failing to object at trial. See, e.g., Estate of Hunt v. Bd. of Comm'rs of Henry County, 526 N.E.2d 1230, 1236 n. 5 (Ind.Ct.App.1988) (holding that a party waived an allegation that an instruction was erroneous where the party failed to object at trial to the instruction on those grounds), trans. denied; see also Ind. Trial Rule 51(C) ("No party may claim as error the giving of an instruction unless he objects thereto ... stating distinctly the matter to which he objects and the grounds of his objection.").

As noted above, the Defendants argued both that Dyer's speed was a proximate cause of his death and that Doyle was confronted with a sudden emergency, which resulted in a faked left syndrome accident. The jury returned a verdict for the Defendants. The jury's verdict could have been based upon either a finding that Doyle was not at fault based on a sudden emergency or a finding that Dyer was greater than fifty percent at fault for his death due to his speed. We have concluded that the trial court abused its discretion by admitting evidence concerning the faked left syndrome and by instructing the jury regarding sudden emergency. We have also concluded that the Estate waived any argument concerning the use of Dyer's speed as a proximate or intervening cause of his death.

---

4. Although the Estate did not object to this instruction and raises no issue regarding it on appeal, we note that the instruction is erroneous. It was unnecessary that Doyle's negligence be "*the* proximate cause" of Dyer's death. Appellees' App. at 43 (emphasis added). "Acts of negligence need not be the sole proximate cause of the injury in order for liability to arise." *Indian Trucking v. Harber*, 752 N.E.2d 168, 172 (Ind.Ct.App.2001). "If a party's negligence is *a* proximate cause of the injury, that party shall be liable for the injury." *Id.* (emphasis added).

■ .Our supreme court has stated that "the trial court has the responsibility to inform the jury of the applicable law in order for the jury to comprehend the case and come to a judgment that is correct, just and fair." *St. Margaret Mercy Healthcare Ctrs., Inc. v. Poland,* 828 N.E.2d 396, 404 (Ind.Ct.App.2005), *trans. denied.* Moreover, "[a]n erroneous instruction merits reversal if it could have formed the basis for the jury's verdict." *Fleetwood Enter., Inc. v. Progressive N. Ins. Co.,* 749 N.E.2d 492, 495 (Ind.2001). Clearly, the trial court's erroneous sudden emergency instruction could have formed the basis of the jury's verdict in favor of the Defendants. In a similar vein, our supreme court has said, "We will assume that the erroneous instruction influenced the jury's verdict unless it appears from the evidence that the verdict could not have differed even with a proper instruction." *Canfield v. Sandock,* 563 N.E.2d 1279, 1282 (Ind.1990). Here, the jury was erroneously instructed on sudden emergency, and the parties offered conflicting evidence as to whether Dyer's speed caused his death. Given the undisputed evidence that Doyle's vehicle was traveling in Dyer's lane when the collision occurred, it is difficult to imagine that the verdict might not have been different if the faked left syndrome and the sudden emergency doctrine had not been improperly injected into the case. Consequently, we cannot say that the verdict could not have differed even had the jury been properly instructed.

■ As mentioned above, a party seeking a new trial on the basis of an improper jury instruction must show a reasonable probability that its substantial rights have been adversely affected. *Elmer Buchta Trucking,* 744 N.E.2d at 944. We believe that the Estate has met that threshold here. We therefore reverse and remand for a new trial.

Reversed and remanded.

SULLIVAN, J., concurs.

SHARPNACK, J., concurring and dissenting in part with separate opinion.

SHARPNACK, Judge, concurring and dissenting in part.

I respectfully concur in part and dissent in part. I agree with the majority's conclusions in Issues I, II, III, and IV; however, I disagree with the majority's ultimate conclusion that the judgment should be reversed and remanded for a new trial.

As the majority notes, we will affirm a general verdict if the evidence is sufficient to sustain any theory of liability. *Picadilly, Inc. v. Colvin,* 519 N.E.2d 1217, 1221 (Ind.1988). The Indiana Supreme Court applied this principle in the context of multiple theories of liability presented by a plaintiff in *PSI Energy, Inc. v. Roberts,* 829 N.E.2d 943, 950 (Ind.2005), *abrogated on other grounds by Helms v. Carmel High School Vocational Building Trades Corp.,* 854 N.E.2d 345 (Ind.2006). There, the court noted that "a general verdict will be sustained if the evidence is sufficient to sustain any theory of liability." The plaintiff had pursued vicarious liability and premises liability theories. 829 N.E.2d at 948. The court held that PSI was not vicariously liable. *Id.* at 957. Under the premises liability theory, the court held that the instructions were erroneous. *Id.* at 962. However, PSI did not object to the instructions and raised no issue regarding them on appeal. *Id.* Rather, PSI argued that the evidence was insufficient to support liability under the premises liability theory. *Id.* The court also noted that "[e]ven erroneous instructions require affirmance if there is no objection at trial and the facts support recovery under the

instructions." *Id.* (citing *Picadilly, Inc. v. Colvin,* 519 N.E.2d 1217, 1221 (Ind.1988); Ind. Trial Rule 51(C)). Even though PSI was not liable under the vicarious liability theory and the premises liability instructions were erroneous, the court affirmed the judgment against PSI because the evidence was sufficient under the premises liability instructions to sustain the jury's verdict. *Id.; see also PSI Energy, Inc. v. Roberts,* 834 N.E.2d 665, 668–669 (Ind. 2005) (clarifying on rehearing that "in a civil case the only issue preserved by a motion challenging the sufficiency of the evidence ... is the sufficiency of the evidence under the instructions" and that "a claim of sufficiency of the evidence is judged against the instructions").

Similarly, here, the Defendants argued both that Dyer's speed was a proximate cause of his death and that Doyle was confronted with a sudden emergency, which resulted in a faked left syndrome accident. The jury's verdict for the Defendants could have been based upon either defense theory. Although we have concluded that the trial court abused its discretion by admitting evidence regarding the faked left syndrome and by instructing the jury regarding sudden emergency, the Estate waived any argument concerning Dyer's speed as a proximate cause of his death. As a result of the Estate's waiver, the jury could have found that Dyer was greater than fifty percent at fault for his death due to his speed, and the verdict is sustainable on this basis. As in *PSI,* regardless of the errors in the admission of evidence and jury instructions, we can affirm the general verdict if the evidence is sufficient to sustain any theory of liability. Consequently, despite the errors in the trial, I would affirm judgment for the Defendants.