## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 17 2017, 6:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard J. LaSalvia
South Bend, Indiana

ATTORNEY FOR APPELLEE

Daniel W. Glavin
Schererville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Perpetual Wambugu, as Personal Representative of the Estate of Kelvin Mwangi, et al., <br><br> *Appellants-Plaintiffs,* <br><br> v. <br><br> Palmer Funeral Homes, Inc., <br><br> *Appellee-Defendant.* | August 17, 2017 <br><br> Court of Appeals Case No. 71A03-1609-CT-2255 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Steven L. Hostetler, Judge <br><br> Trial Court Cause No. 71D07-1307-CT-172 |

**Barnes, Judge.**

## Case Summary

[1] Perpetual Wambugu and John Mwangi appeal the jury verdict and subsequent judgment in favor of Palmer Funeral Homes, Inc. ("Palmer") on Perpetual and

John's claims for negligent and intentional infliction of emotional distress that resulted from viewing the remains of Kelvin Mwangi (Perpetual's son and John's twin brother).[1] We affirm.

## Issues

The issues raised for review, as restated, are:

I. whether the trial court properly allowed evidence of intervening cause; and

II. whether the trial court properly instructed the jury on intervening cause.

## Facts

Perpetual is Kelvin's mother, and John is Kelvin's twin brother. On July 18, 2012, twenty-two-year-old Kelvin drowned in a swimming pool at an apartment complex located in Mishawaka. On July 19, 2012, an autopsy was conducted by the South Bend Medical Foundation ("SBMF"), which determined that Kelvin's death was due to an accidental drowning.

On July 20, 2012, Perpetual hired Palmer to embalm Kelvin's body, supply a casket, provide a funeral visitation at Palmer in South Bend, and arrange for Kelvin's remains to be transported to Kenya where a second funeral service was

---

[1] Daniel Kabui (Kelvin's friend) and the Estate of Kelvin Mwangi were plaintiffs in the trial court case; however, they have not joined this appeal.

to be held and the burial was to take place. After the autopsy was completed, Kelvin's body was transported to Palmer. Problems arose, however, when the funeral director tried to embalm Kelvin. During the autopsy, Kelvin's carotid arteries were cut in a fashion that made them unavailable for use for traditional embalming methods. This made it difficult to supply embalming fluid to Kelvin's face and head. It was determined that a topical preservation gel would be applied to Kelvin's face.

[5] When Perpetual and John viewed Kelvin's body at the funeral visitation at Palmer, they were unhappy with the way Kelvin looked because Kelvin's face showed signs of discoloration due to dehydration that was caused by the gel. After seeing his brother's body at the visitation, John chose not to view his brother's body again.

[6] Once the visitation at Palmer concluded, Kelvin's body was placed inside of a metal case. The case was placed inside of a casket that was locked and then transported to Kenya. Palmer provided Perpetual with a key to the casket.

[7] Perpetual and John traveled to Kenya and received Kelvin's body from customs. Perpetual was required to use the key to open the casket to prove that the casket belonged to her. The casket then was transported to the Kenyatta University Funeral Home ("Kenyatta") in Nairobi. Perpetual use the key to open the casket at Kenyatta, and a foul odor emanated. Perpetual viewed her son's body at Kenyatta, and the body appeared to be decomposing.

[8] Kenyatta performed some work on Kelvin's body, and the body then was transferred to another funeral home located in a town outside of Nairobi. When the body arrived at the second funeral home, Perpetual again used the key to open the casket. She saw that her son's body was severely decomposed. Perpetual fainted and was removed from the funeral home.

[9] On July 17, 2013, the plaintiffs[2] filed a complaint against Palmer, alleging negligent and intentional infliction of emotional distress. The plaintiffs alleged that Palmer engaged in extreme and outrageous conduct related to the embalming and preservation of Kelvin's body and that, as a result of Palmer's actions, Perpetual, John, and Daniel Kabui suffered emotional distress.

[10] Palmer filed its answer and affirmative defenses to the plaintiffs' complaint and named SBMF as a nonparty. After leave of the trial court, the plaintiffs filed an amended complaint adding SBMF as a party defendant. SBMF filed a motion for summary judgment, which the trial court granted as to all claims asserted by the plaintiffs.

[11] On April 7, 2016, the plaintiffs filed a motion in limine, asking the trial court to exclude any evidence or mention by Palmer that SBMF was the proximate cause of the plaintiffs' damages as a nonparty or for any other purposes. On June 28, 2016, the trial court granted the plaintiffs' motion in limine as to

---

[2] In this appeal, "plaintiffs" refers to Perpetual Wambugu, John Mwangi, the Estate of Kelvin Mwangi, and Daniel Kabui, the parties to the trial court case.

evidence of fault allocation as to SBMF, but denied the motion as to evidence of the actions of SBMF as to proximate cause.

[12] On August 17, 2016, the trial court signed and filed the pretrial order. In the order, Palmer set forth in its contentions:

> At no time did Palmer Funeral Homes act intentionally or negligently to cause harm to [p]laintiffs. Palmer Funeral Homes contends it acted with reasonable care under very difficult circumstances created by the conduct of the South Bend Medical Foundation and denies it is liable to plaintiffs. The South Bend Medical Foundation's failure to leave sufficient carotid arteries during its autopsy prevented Palmer from infusing Kelvin Mwangi's remains conventionally and caused very difficult circumstances which Palmer used reasonable care to overcome. Palmer's actions fell within the standard of care imposed on funeral directors or embalmers under the law. . . .

Appellants' App. Vol. III p. 29.

[13] Prior to the start of the trial, which took place August 23-26, 2016, the plaintiffs orally renewed their written motion in limine to exclude evidence or any mention of proximate cause as to SBMF. The trial court again denied the motion. The plaintiffs also orally moved for a motion in limine as to any reference to, or evidence of, Kenyatta's actions "being a cause or an intervening cause of plaintiffs' injuries." Tr. Vol. II p. 39. The basis of the oral motion was that Palmer failed to set out in its contentions in the final pretrial order any issues of Kenyatta's actions being an intervening cause and that Palmer failed to

raise as an affirmative defense in its answer the issue of intervening cause as to Kenyatta. The trial court denied the oral motion in limine regarding Kenyatta.

[14] Following the presentation of evidence, final jury instructions were provided. The following final jury instruction on intervening cause was provided to the jury over the plaintiffs' objection:

> Sometimes an unrelated event breaks the connection between a defendant's negligent action and the injury a plaintiff claims to have suffered. If this event was not reasonably foreseeable, it is called an 'intervening cause.'
>
> When an intervening cause breaks the connection between a defendant's negligent act and a plaintiff's injury, a defendant's negligent act is no longer a 'responsible cause' of that plaintiff's injury.

Tr. Vol. IV p. 223. The plaintiffs had objected to the instruction when it was proposed on the basis that the proposed jury instruction was "[n]ot supported by the evidence," was "waived as to the previous motion in limine at the start of the trial," was "[w]aived in the [pretrial] order," and was "not . . . raised as an affirmative defense in the answer." *Id*. at 154. The plaintiffs also argued that Kenyatta's actions were "not a true intervening cause." *Id*. at 155.

[15] Following the trial, the jury found in favor of Palmer. Palmer did not seek damages, and the jury did not award any monies to Palmer. Judgment was entered on September 6, 2016. Perpetual and John now appeal.

# Analysis

## *I. Admission of Evidence*

Perpetual and John argue that the trial court erred in allowing at trial evidence of intervening cause. However, we first determine whether Perpetual and John waived their argument as to the admission of evidence of intervening cause by failing to object at trial. According to Palmer, Perpetual and John did not preserve the issue for this court's review because they failed to object at trial to the admission of the evidence. We agree.

The theory Palmer presented at trial was that the Kenyatta employees' act of showing Kelvin's remains to Perpetual, without first taking steps to make the body presentable after having been shipped from Chicago to Nairobi, was "unforeseeable conduct" that constituted "an intervening cause, breaking the chain of causation resulting from Palmer's purported negligence." Appellee's Br. p. 6. Palmer's specific argument was:

> When embalmed remains are shipped, which is a common occurrence in the funeral business, it is universally known in the field that the receiving funeral home must take steps to 'clean up' the remains before they are viewed by the decedent's family . . . because, during shipment, the remains are jostled and are in an unpressurized cargo hold. As a result, there can be leakage, the development of mold, or an odor.

*Id*. The Palmer funeral director and an expert hired by Palmer testified to this without objection. They further testified, without objection, that "there are commonly used techniques which could have been employed to cure the

problems . . . , and if these commonly used techniques had been employed, the remains would not have been in the state which caused Perpetual the emotional distress she claimed as a result of seeing them." *Id.*

[18] According to Perpetual and John, the issue of intervening cause was preserved for this court's review because they argued at trial that a motion in limine should be granted and the evidence excluded. In support of their argument, they cite Indiana Evidence Rule 103(b) which reads: "Once the court rules definitively on the record at trial a party need not renew an objection or offer of proof to preserve a claim of error for appeal."

[19] Because a motion in limine is not a final ruling on the admissibility of evidence, a ruling on the motion does not preserve the error for appeal. *Watson v. State,* 972 N.E.2d 378, 386 (Ind. Ct. App. 2012). In order to preserve an error for appellate review, a party must do more than challenge the ruling on a motion in limine. *Hollowell v. State*, 753 N.E.2d 612, 615 (Ind. 2001). Absent either a ruling admitting evidence accompanied by a timely objection or a ruling excluding evidence accompanied by a proper offer of proof, there is no basis for a claim of error. *Id.*; *see* Ind. Evidence Rule 103(a) ("[a] party may claim error in a ruling to admit evidence only if the error affects a substantial right of the party and: (1) . . . a party, on the record: (A) timely objects . . .; and (B) states the specific ground, unless it was apparent from the context").

[20] The record demonstrates that, prior to the start of the trial, Perpetual and John made oral motions in limine to exclude evidence as to SBMF and Kenyatta

being intervening causes of Perpetual and John's emotional distress. The trial court denied the motions. At trial, when Palmer introduced evidence of intervening cause, Perpetual and John did not object.[3] We, therefore, must conclude that Perpetual and John have not preserved the issue of admissibility of intervening cause evidence for our review.

[21] Waiver notwithstanding, even if Perpetual and John had properly preserved their challenge to the admission of the intervening cause evidence, we find that the trial court properly admitted the evidence of intervening cause and properly instructed the jury thereon. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Reed v. Bethel*, 2 N.E.3d 98, 107 (Ind. Ct. App. 2014). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id*. We will not reverse the trial court's admission of evidence absent a showing of prejudice. *Id*.

[22] Perpetual and John argue that the trial court abused its discretion when it allowed evidence of intervening cause because intervening cause was an affirmative defense that Palmer waived by failing to plead it as a defense.

---

[3] During Palmer's direct examination of its funeral director, Perpetual and John objected when Palmer's counsel asked the funeral director, "Given your years of service and your experience and your training, would you have expected the staff at the Kenyatta Mortuary to open Kelvin's casket in front of Perpetual Wambugu?" Appellee's Br. p. 8. Perpetual and John initially objected on grounds there was "[n]o foundation as to what she's aware of, what's permitted or what is the standard in Kenya." *Id*. However, the objection was withdrawn.

According to Perpetual and John, Palmer "did not reserve the nonparty defense either by raising the issue when South Bend Medical Foundation was granted summary judgment or by naming Kenyatta as a nonparty for allocation of fault." Appellants' Br. p. 15. However, Perpetual and John confuse Palmer's intervening cause argument with a nonparty defense.

[23] Indiana Trial Rule 8(C) states that responsive pleadings shall set forth affirmatively all affirmative defenses. *See* Ind. Trial Rule 8(C) (listing as examples, "accord and satisfaction, arbitration and award, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, lack of jurisdiction over the subject-matter, lack of jurisdiction over the person, improper venue, insufficiency of process or service of process, the same action pending in another state court of this state, and any other matter constituting an avoidance, matter of abatement, or affirmative defense"). Failure to do so results in waiver. *Molargik v. West Enterprises, Inc.*, 605 N.E.2d 1197, 1199 (Ind. Ct. App. 1993).

[24] Indiana's Comparative Fault Act, which allocates damages among the parties according to their respective negligence, provides that "[i]n an action based on fault, a defendant may assert as a defense that the damages of the claimant were caused in full or in part by a nonparty." Ind. Code § 34-51-2-14. The burden of proof of a nonparty defense is upon the defendant, who must affirmatively plead the defense. I.C. § 34-51-2-15. The defendant also has the burden of identifying the nonparty to whom fault should be attributed. *McDillon v. N.*

*Indiana Pub. Serv. Co.*, 812 N.E.2d 152, 156 (Ind. Ct. App. 2004), *transfer granted*, *opinion vacated* (Dec. 20, 2004), *opinion aff'd in part*, *vacated in part on other grounds*, 841 N.E.2d 1148 (Ind. 2006). If the nonparty is not identified, then the jury may not assign fault against the nonparty. *Id.*

[25] Palmer did not assert a nonparty defense, did not identify SBMF or Kenyatta as nonparties to whom fault should be attributed, and did not ask the jury to allocate fault to Kenyatta in its verdict. Palmer did, however, present evidence of intervening cause to show that it was not the proximate cause of Perpetual and John's emotional distress. Intervening cause is not one of the defenses listed in Rule 8(C). However, it was an integral part of the proximate cause analysis of Perpetual and John's negligent and intentional infliction of emotional distress claims.[4] *See*, *e.g.*, *National Market Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 526-27 (2004) (holding that intervening cause in underlying case was not an affirmative defense because intervening cause was integral part of proximate cause analysis in breach of contract/breach of duty of good faith and fair dealing action); *cf. Jarrell v. Monsanto Co.*, 528 N.E.2d 1158, 1163-64 (Ind. Ct. App. 1988) (holding that genuine issues of material fact precluded grant of summary judgment on negligence claim and referring to "contributory

---

[4] To prove negligent infliction of emotional distress, Perpetual and John were required to show that: (1) Palmer was negligent; (2) Perpetual and John were directly involved in or impacted by an incident related to Palmer's negligence; (3) Perpetual and John suffered serious emotional distress of the type a reasonable person would expect to occur; and (4) Palmer's negligence was a responsible cause of Perpetual and John's emotional distress. Tr. Vol. IV p. 219. The elements of the tort of intentional infliction of emotional distress are that the defendant: (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another. *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991).

negligence and intervening negligence" as affirmative defenses) (footnote omitted), *trans. denied*. The trial court did not abuse its discretion in allowing evidence of intervening cause.

## II. Jury Instructions

As for Perpetual and John's contention that the trial court abused its discretion when it instructed the jury on intervening cause because the instruction is not supported by the evidence and "invited the jury to consider the fault of a nonparty," we disagree. Appellants' Br. p. 22. The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind. 2001). Instruction of the jury is left to the sound judgment of the trial court and will not be disturbed absent an abuse of discretion. *Schmidt v. State*, 816 N.E.2d 925, 930 (Ind. Ct. App. 2004), *trans. denied*.

In reviewing a trial court's decision to give or to refuse tendered instructions, this court considers: (1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the instruction is covered by other instructions which are given. *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 109 (Ind. 2002). The trial court has discretion in instructing the jury, and we will reverse on the last two issues only when the instructions amount to an abuse of discretion. *Estate of Dyer v. Doyle*, 870 N.E.2d 573, 582 (Ind. Ct. App. 2007), *trans. denied*. A party seeking a new trial on the basis of an improper jury

instruction must show a reasonable probability that its substantial rights have been adversely affected. *Id.*

[28] The trial court provided the jury instruction on intervening cause which is drawn verbatim from Indiana Model Civil Jury Instructions 303 (2016 Ed.):

> Sometimes an unrelated event breaks the connection between a defendant's negligent action and the injury a plaintiff claims to have suffered. If this event was not reasonably foreseeable, it is called an 'intervening cause.'

> When an intervening cause breaks the connection between a defendant's negligent act and a plaintiff's injury, a defendant's negligent act is no longer a 'responsible cause' of that plaintiff's injury.

Perpetual and John do not argue that the instruction is an incorrect statement of the law. There was evidence in the record to support the giving of an instruction on intervening cause. As noted above, Palmer did not assert a nonparty defense but, instead, argued intervening cause. The trial court did not abuse its discretion by giving the instruction on intervening cause.

## Conclusion

[29] Perpetual and John waived their argument as to the admission of evidence of intervening cause by failing to object at trial. Waiver notwithstanding, the trial court properly allowed Palmer to introduce evidence of intervening cause and properly instructed the jury on intervening cause. The judgment of the trial court is affirmed.

Affirmed.

Baker, J., and Crone, J., concur.